UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DANIEL WALL-DESOUSA and SCOTT WALL-DESOUSA,**

      **Plaintiffs,**

v.   Case No:  6:14-cv-1959-Orl-41DAB

**MAUREEN JOHNSON, CLAYTON BOYD WALDEN and DIANNE BOWMAN,**

      **Defendants.**

                                             /

**ORDER**

THIS CAUSE is before the Court on Defendant Dianne Bowman's Motion to Dismiss (Doc. 56) and Defendants Maureen Johnson and Clayton Boyd Walden's Motion to Dismiss (Doc. 57). As to both motions, Plaintiffs filed a single Response (Doc. 58). For the reasons set forth below, the motions will be granted.

**I.   BACKGROUND**

Plaintiffs, Daniel Wall-DeSousa ("Daniel") and Scott Wall-DeSousa ("Scott"),[1] allege that they are residents of Brevard County, Florida and that they were lawfully married as a same-sex couple in New York on December 6, 2013. (Second Am. Compl., Doc. 55, ¶¶ 5, 11). Plaintiffs further allege that their marriage certificate reflects their new, marital surname—Wall-DeSousa[2]—and that they changed their names with the United States Social Security Administration to reflect

---

[1] For purposes of clarity, the Court will refer to the individual Plaintiffs by their first names. *Cf.* M.D. Fla. R. 5.03(b)(8).

[2] Previously, Daniel's surname was DeSousa, and Scott's surname was Wall. (Second Am. Compl. ¶ 13).

their marital surname. (*Id.* ¶¶ 12–13). According to Plaintiffs, Daniel obtained a Florida driver license in his marital surname by visiting the Brevard County Tax Collector's Office in Palm Bay, Florida. (*Id.* ¶ 15). Thereafter, Scott purportedly visited the Brevard County Tax Collector's Office in Indian Harbour Beach, Florida to also obtain a Florida driver license in his marital surname. (*Id.* ¶ 16). Plaintiffs maintain that Scott presented his marriage certificate and social security card but was denied. (*Id.* ¶¶ 17–18). Particularly, Plaintiffs contend that Defendant Dianne Bowman ("Ms. Bowman"), who was the supervisor at the Indian Harbour Beach office, (*id.* ¶ 6), "tossed the marriage certificate back to . . . Scott and indicated that the marriage certificate was not a legal document in the State of Florida," (*id.* ¶ 18), in accordance with section 741.212 of the Florida Statutes.[3] Plaintiffs also aver that Ms. Bowman threatened to call the Palm Bay office to cancel Daniel's previously-issued driver license and that Ms. Bowman did, in fact, call the Palm Bay office to prevent Scott from obtaining a new driver license. (*Id.* ¶¶ 19, 21).

Thereafter, Scott was purportedly advised by the Brevard County Tax Collector that, based on a policy of the Florida Department of Highway Safety and Motor Vehicles ("DHSMV"), Scott could use his marriage certificate to obtain a driver license in his marital surname because the certificate did not specifically denote that the marriage was same-sex. (*Id.* ¶¶ 23–24). However, Scott was further advised that, because the Brevard County Tax Collector was aware that Scott's name change resulted from a same-sex marriage, Scott would have to obtain a new driver license

---

[3] Subsection 741.212(1) provides that "[m]arriages between persons of the same sex entered into in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, . . . are not recognized for any purpose in this state." However, following the events at issue in this case, the Supreme Court held that "there is no lawful basis for a State to refuse to recognize a lawful same-sex marriage performed in another State on the ground of its same-sex character." *Obergefell v. Hodges*, 576 U.S.—, 135 S. Ct. 2584, 2608 (2015).

in a different county. (*Id.* ¶¶ 25–26). Accordingly, Scott allegedly traveled to Orange County, Florida and obtained a driver license in his marital surname on October 15, 2014. (*Id.* ¶¶ 27, 30).

On October 30, 2014, Plaintiffs spoke to a local news anchor—"Jorge Estevez from WFTV Channel 9"—to inform others of the DHSMV policy. (*Id.* ¶¶ 31–32). Shortly thereafter, on November 7, 2014, Plaintiffs contend that they received letters from the DHSMV, "indicating that their licenses would be cancelled indefinitely as of November 25, 2014." (*Id.* ¶ 33). The letters were allegedly dated November 5, 2014, and signed by Defendant Maureen Johnson ("Ms. Johnson") and Defendant Clayton Boyd Walden ("Mr. Walden"). (*Id.*). In response, Scott returned to the Brevard County Tax Collector's Office in Indian Harbour Beach to change his driver license back to his maiden name, and while there, Ms. Bowman purportedly informed Scott that he could obtain a "courtesy license," which would be cancelled if Scott did not produce a passport within ninety days that reflected his marital name. (*Id.* ¶ 38). Daniel decided to return his driver license to the DHSMV. (*Id.* ¶ 39).

Nevertheless, on January 5, 2015, the DHSMV issued a "Technical Advisory" (Doc. 28-1), which states that "[e]ffective January 6, 2015, all offices are to accept all marriage certificates as sufficient proof to complete a name change on a driver license or identification card." Subsequently, on January 13, 2015, Plaintiffs obtained new driver licenses in their marital names. (Second Am. Compl. ¶ 41).

As relevant, Plaintiffs filed the First Amended Complaint (Doc. 31) on January 23, 2015. Therein, Plaintiffs—in a single Count—alleged First Amendment retaliation. On Defendants' motions, (Doc. Nos. 35, 38), the Court dismissed the First Amended Complaint without prejudice, (July 16, 2015 Order, Doc. 53, at 7). Particularly, the Court took issue with Plaintiffs' failure to— identify which speech was the subject of the retaliation claim; distinguish between Defendants;

identify which denial of Plaintiffs' driver licenses was the retaliatory conduct; and limit the factual allegations to the retaliation claim. (*Id.* at 5–6). As a result, Plaintiffs filed the Second Amended Complaint on July 31, 2015. Therein, Plaintiffs allege two Counts of First Amendment retaliation—the first is against Ms. Johnson and Mr. Walden; the second is against Ms. Bowman. Presently, all Defendants seek dismissal of the Second Amended Complaint.

## I.  LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While "[a] plaintiff is 'not required to negate an affirmative defense in [its] complaint,'" *Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 976 (11th Cir. 2015) (per curiam) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)),

"[a] complaint may be dismissed, however, when the existence of an affirmative defense 'clearly appears on the face of the complaint,'" *id.* (quoting *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984)).

## II.   DISCUSSION

Defendants argue that they are entitled to qualified immunity and that, therefore, the Second Amended Complaint should be dismissed. Defendants' arguments are well-taken.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "Because qualified immunity is an immunity from suit rather than a mere defense to liability," the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 231–32 (quotations omitted).

To survive a qualified immunity-based motion to dismiss, the plaintiff bears the burden of "satisfy[ing] the two-pronged qualified-immunity standard: (1) the facts alleged in his complaint constitute a violation of his constitutional rights, and (2) the constitutional rights were 'clearly established' when the defendant committed the act complained of." *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014) (citing *Pearson*, 555 U.S. at 232).[4] "A qualified-immunity

---

[4] As to their qualified immunity defense, Defendants do bear the initial burden of demonstrating that they were "acting within the scope [of their] discretionary authority at the time of the alleged constitutional violation." *Morris*, 748 F.3d at 1321 n.15. "Once the defendant does

inquiry can begin with either prong; neither is antecedent to the other." *Id.* (citing *Pearson*, 555 U.S. at 236). Under the second prong, "[t]he relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [state official] that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012)). It follows that the right "alleged to have [been] violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Stated differently, "the district court must consider the law 'in light of the specific context of the case, not as a broad general proposition.'" *Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236–43). While a plaintiff "need not demonstrate that there is case-law specifically addressing his factual scenario, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Morris*, 748 F.3d at 1322 (quoting *Ashcroft v. al-Kidd*, 563 U.S.—, 131 S. Ct. 2074, 2083 (2011)).

Here, Defendants argue that—by way of the Second Amended Complaint—Plaintiffs do not adequately allege a violation of a clearly established constitutional right. *See Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) ("It is . . . appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right." (quotation omitted)). In response, Plaintiffs argue that "First Amendment retaliation [was] clearly illegal under established law." (Resp. to Mots. Dismiss

---

so, the burden shifts to the plaintiff to demonstrate that the defendant violated a clearly established constitutional right." *Id.* Here, neither party disputes that Defendants were acting within their discretionary authority when revoking, either directly or indirectly, Plaintiffs' driver licenses. *See Jackson v. Humphrey*, 776 F.3d 1232, 1240 (11th Cir. 2015) (bypassing the discretionary authority inquiry where not disputed); *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011) (same).

at 6–7). To state a claim for First Amendment retaliation, a plaintiff must sufficiently allege "that (1) her speech was constitutionally protected; (2) she suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)). Under the third element, "[i]n order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Id.* (citing *Smith v. Mosley*, 523 F.3d 1270, 1278 (11th Cir. 2008)).

Plaintiffs fall woefully short of upholding their burden as to qualified immunity. To begin, Plaintiffs' qualified immunity analysis spans little more than a single page and comprises only three paragraphs. The first paragraph is limited to outlining the qualified immunity inquiry; the remaining two paragraphs are as follows:

> Defendants properly identify the pertinent question—whether they violated clearly established law. However, Defendants are incorrect in identifying what established law is at issue in this case. The pertinent qualified immunity inquiry is whether or not First Amendment retaliation was clearly illegal under established law.
>
> A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable. The Eleventh Circuit has recognized that First Amendment retaliation is clearly illegal under established law and has been since at least 1988.

(Resp. to Mots. Dismiss at 6–7) (citations and quotation marks omitted). It goes without saying that such an analysis is decidedly unhelpful; it stands for little more than the proposition that there exists a cause of action for First Amendment retaliation. As noted, "Plaintiffs cannot carry their burden of proving the law to be clearly established by stating constitutional rights in general terms." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). To permit otherwise would

"significantly undermine[] part of the rationale for the qualified immunity defense," *Muhammad v. Wainwright*, 839 F.2d 1422, 1424 (11th Cir. 1987), which requires that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," *Anderson*, 483 U.S. at 640. Plaintiffs, however, make no attempt to particularize the constitutional right at issue; without doing so, Plaintiffs fail to show how reasonable officials in Defendants' circumstances would have understood their conduct to violate Plaintiffs' First Amendment rights. *See Smith ex rel. Estate of Ashley v. Brevard Cty.*, No. 6:06-cv-715-Orl-31JGG, 2006 WL 2355583, at *5 n.13 (M.D. Fla. Aug. 14, 2006) (granting qualified immunity where, in response to the defendants' motions to dismiss, the plaintiffs failed to "conduct[] a fact-specific analysis" and only cited caselaw "for broad propositions of law").

While Plaintiffs may "demonstrate that the contours of a right are clearly established" by "point[ing] to a 'broader, clearly established principle [that] should control the novel facts [of the] situation'" or by showing that "the conduct involved in the case may 'so obviously violate[] th[e] [C]onstitution that prior case law is unnecessary,'" *Morris*, 748 F.3d at 1322 (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012)), Plaintiffs do not sincerely attempt either endeavor. Even considering "that it is 'settled law' that the government may not retaliate against citizens for the exercise of First Amendment rights," Plaintiffs make no effort to show that Defendants' alleged conduct violated such rights—i.e., that the broad "constitutional rule *applies* with 'obvious clarity'" to the factual allegations in this case. *Bennett*, 423 F.3d at 1255–56 (emphasis added); *see also Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010) ("At the motion to dismiss stage in the litigation, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." (quotation omitted)). Simply confirming the existence of Plaintiffs' cause of action, without more, says nothing about the objective reasonableness of Defendants' alleged conduct.

In failing to carry their burden, Plaintiffs do not clarify whether the retaliatory conduct at issue was either the decision to enforce section 741.212, in itself, or the resulting revocation of their driver licenses. Assuming the latter, *see Brannon v. Finkelstein*, 754 F.3d 1269, 1275 (11th Cir. 2014) (noting that such conduct-based distinctions "conflate[] the issue of adverse conduct with its cause"), Plaintiffs point to no factual allegations from which it can reasonably be inferred that the revocation was caused by a subjective retaliatory motive, as opposed to non-retaliatory enforcement of section 741.212.[5] In any event, in the Eleventh Circuit, "[u]nless it, as a legal matter, is plain under the specific facts and circumstances of the case that the defendant's conduct—despite his having adequate lawful reasons to support the act—was the result of his unlawful motive, the defendant is entitled to immunity." *Foy*, 94 F.3d at 1535; *see also Jackson*, 776 F.3d at 1241 ("[T]he mixed motive analysis examines whether reasonable [officials] could anticipate that their actions, based on both lawful and unlawful motives, would result in a violation of clearly established law."); *Sherrod v. Johnson*, 667 F.3d 1359, 1364 (11th Cir. 2012) (per curiam) ("A proper analysis of [the defendants'] entitlement to qualified immunity is not whether they knew that terminating" the plaintiff "in retaliation for protected speech was lawful, but rather whether terminating him based upon all the information available to them at the time, to include any knowledge of his protected speech, was objectively reasonable."). Based on the allegations of the Second Amended Complaint and assuming their truthfulness, it is not plain that no lawful motive played a part in the revocation of Plaintiffs' driver licenses.

---

[5] Defendants Johnson and Walden even go a step further and argue that it was not clearly established that section 741.212 was unconstitutional at the time of Defendants' conduct—thereby, attempting to show that the unlawfulness of their non-retaliatory motive was not clearly established.

What is clear is that Plaintiffs bear the burden of showing that, based on the allegations of the Second Amended Complaint, Defendants violated a clearly established constitutional right; it is equally clear that Plaintiffs have made no genuine attempt to do so, thereby failing to satisfy their burden. The result is that Defendants are entitled to qualified immunity, and this case will be dismissed.

### III.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant Dianne Bowman's Motion to Dismiss (Doc. 56) is **GRANTED**.

2. Defendants Maureen Johnson and Clayton Boyd Walden's Motion to Dismiss (Doc. 57) is **GRANTED**.

3. The Second Amended Complaint (Doc. 55) is **DISMISSED with prejudice**.

4. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on January 19, 2016.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record